Good morning, Your Honors. May it please the Court, Kenneth M. Stern for appellant. He was convicted of conspiracy to possess cocaine for the purpose of distribution. The issue is whether or not there is substantial evidence in the case. The government relies upon three purported facts to show he was purportedly involved in the offense. Once was a case where the government proposed four different facts to show somebody's involvement in the crime. In that case, the Court analyzed each of those facts separately, found each fact to be lacking, and then noted that 0 times 4 equals 0. And I would submit to the Court in this case, 0 times 3 equals 0. I'm going to ask you a question. What was the theory of the defense at trial? The theory of the defense at trial was that the government had not proved its case, had not submitted sufficient facts to warrant a conviction of Mr. Prieta-Quezada. Well, was there any alternative kind of rationale for Prieta-Quezada's behavior on the day, in the day in question, offered to the jury? Was there any sort of alternative, other than you were just going to rest on reasonable grounds? Well, I believe that there was some – I recall somewhere there was some – something mentioned about him coming down to – coming up from Mexico to buy a car. But I think the defense really relied on the fact that each of these three factors that supposedly showed his commission of the offense were all lacking, both individually and in – in total, and that it came within the rule that any reasonable hypothesis of innocence or any equivocal evidence is not substantial evidence for the conviction. Now, you made a motion for us to accept a videotape. I gather the videotape was admitted into evidence? Yes, it was, Your Honor. All right. Then it's part of the record. So why did you need to make a motion? That's what I've seen suggested done by other attorneys, just to make sure it gets to the court, because there's a rule that says exhibits are not to be sent to the court unless the court requests them. And I think that's an important part of the evidence, because it – it shows two of the three supposed facts, being his supposedly being a lookout, and then him supposedly touching or moving the box. So I just want to make sure the Court had that. Okay. So – so you would ask that we grant the motion and review the videotape? Yes, Your Honor. And what the videotape will show, first in terms of his supposedly being a lookout, the Court will see he's standing in a yard by himself. He's standing in a driveway. There are some vehicles there. There's nobody else around. There's no need at that point in time for anybody really to be a lookout. The other people are in the house, which I would also suggest shows he's not part of the conspiracy. If he's standing in the driveway, then he could be looking for people who might be walking up the driveway, people who are passing by on the street. It's not that he's guarding people who aren't necessarily in the house. It could be, or he could just be standing there. And this is a hypothesis that can point towards innocence or being a lookout. Yeah, but at this stage of the proceedings, we have to take the evidence in light most favorable to the jury's verdict. I understand that. But if you look at it, if you look at – Why would we construe that evidence just to assume that and say, oh, he was just standing there in front of the house for a long time? Because if you look at the tape as it goes on, then when people enter the yard, he walks away from there, and he's not looking down the driveway. He's coming. He's looking at what's going on with the cars, which there are a couple people standing around. One person moves a box from the trunk of one car to the other. At the point in time, you would expect somebody to be looking out while there's activity going on. He's not looking down the driveway. He's not acting as a lookout whatsoever. And I don't think it can be contended, if you look at the tape, that he's acting as a lookout at that point in time. And also, earlier in the day, when the drugs were actually being taken from one vehicle to another, which you would think would be the most important time for a lookout, is there was no lookout there. So I think if you look at the totality of the facts, this would be perhaps slight evidence of being a lookout, perhaps scant evidence of being a lookout. But that is not sufficient for substantiality of the evidence to be a lookout or to sustain a conviction. And I've cited some cases in my opening brief, which talks about that and talks about when somebody is or is not a lookout. And I concentrated in my brief on cases where their person obviously was convicted and the court found, well, even giving the evidence in most light favorable to the prosecution, there still is not sufficient evidence. And I would submit that that is true of his supposedly being a lookout. It's reasonable with both the hypothesis of him being a lookout and it's reasonable that he's not a lookout. In that case, it cannot be used to sustain a conviction. The other two facts, he touched a box. Maybe he touched a box. I'm not going to – I don't really need to discuss that. Roberts. He touched the box or not, the fact is that he was very, very close to, what was it, $300,000 in cash that had just been placed by one of the other guys into the trunk of the Thunderbird. Carvin. Yes, Your Honor. And there's no facts to show that he knew what was in the box. In fact, the box was sealed. There's no way for him to see it. You had expert testimony about the way that drug gangs work and about how careful they are about who participates in either transporting drugs or transporting large amounts of money. Well, that's true, Your Honor, but he did not transport anything back. He touched a sealed box. There's no way – maybe he touched the sealed box. There's no way he would know from looking at the box that he would know what's in it. There's several other people. I think the inference that the government hoped to draw from the expert's testimony was that people who don't know what's going on are not allowed in the vicinity of large drug or large cash transactions. These guys are moving from one car to another, over $300,000 in two boxes, and he is right there at the trunk with them. Whether he's physically touched the boxes or whether he's opened the boxes to look in them, the expert's testimony was, in general, we don't see people who are not – who don't know what's going on allowed in the vicinity of such transactions. Well, that is circumstantial evidence, Your Honor, certainly. But again, I would submit that this falls into the scant or slight evidence rule and that also it's equivocal, it's not clear, and it doesn't rule out the hypothesis of being innocent. Maybe at some point in time he – you know, not every case falls into the rule or the hypothesis that Your Honor has stated. What are you going to do about the numbered phone? Again, this is merely some circumstantial evidence. It doesn't show any kind of knowledge of what's going on. We have 10 numbered phones. He has phones labeled number one. We have phones in my house, but we don't label them with numbers. Well, everybody has different ways of doing things. You know, for somebody like myself who perhaps is not always the most organized person in the world, that might be a good thing. I don't think that shows any evidence of guilt. But look at all the – Except that some of the other numbers belong to members of the drug conspiracy. Well. Can I ask you a question about your argument with respect to this sentence? Are you making a reasonableness argument, or are you just merely making a guidelines calculation argument? Well, I think the Court was required to do more than just state, well, I agree with the probation report. I think the Court was required to go through and specifically state why he felt that Mr. Minor, rather than Minimal, I think the Court was required to compare his role to the other people and give an explanation of why instead of just saying, referring to the probation report. You're just challenging the application of that? Yes, Your Honor. To apply that guideline adjustment. Yes, Your Honor. Not that the bottom line sentence was unreasonable. No. That's what I understood. I wasn't clear on that because, you know, now that you're supposed to consider Section 3553 issues, I think relative guilt is actually a – or comparative guilt is actually a 3553 factor. Yes, Your Honor. And under U.S. v. Booker, I think the Court should have gone through and been more specific. I think, again, scant evidence isn't enough. The fact there's some evidence is not sufficient. And look at all the factors pointing towards innocence, Your Honor. There was no mention of him at all in any of the discussions prior to the offense. There was no – there was no evidence really other than he happened to be at one place when something was going on with no real evidence showing that he knew what was going on. I would if I may have one minute in rebuttal. All right. We'll see how the government's argument goes. May it please the Court. Mark Young on behalf of the United States. District Court, in describing the evidence in this case, called it overwhelming. And overwhelming it was. While defendant was only at one place on one day, it was a very important day for this drug conspiracy because that was the day the money was being collected and being taken down to Mexico. In this case, there was evidence, direct and circumstantial evidence of defendant's involvement in that conspiracy on that day. For instance, there was a telephone call where he was told by the main source of cocaine that he was picking up the receipts and that he would have everything for him later that same day. There was a later phone call where the arrangements were made to meet at a specific location. And the source of cocaine, law enforcement had already seized at the time of this defendant's arrest, 33 kilograms of cocaine and over $180,000 in cash. And here is the defendant being called by him and being told that he's got to pick up a receipt which the drug agent testified in his training experience as a reference to narcotics proceeds. And that's a term he's heard before used as a reference in other wiretap investigations as a reference to narcotics proceeds. And that this defendant didn't just have that phone call, but then he showed up at the house. And as the evidence showed, he didn't just simply showed up to the house. There was first a meeting at a Polo Loco a short distance from the house. And it's the defendant, not the driver of the car, who knows the main source of the cocaine, Angel Rios. It's the defendant who goes over. There's no need to introduce each other. There's no looking for each other as the testimony came out. There was no phone calls about what you're wearing or what kind of car you're driving. They just went right up to each other, met with each other. And then just before they get to the stash house, it's the defendant who stays in the car while the source, Angel Rios, gets out of his car and gets into the car with the defendant. And it's the two of them who drive up inside the stash house. And that's an important fact. The other person in the car didn't get to go into the stash house. He didn't get to go back where the money was and where the drugs were. It was only this defendant who was able to go back there. And what happens there? Well, the evidence is three different officers testified that the defendant acted as a lookout. The first officer testified that he was on the street in front of the house and saw the defendant walk down the driveway and appear to look up and down the street. The officer in the airship testified that by looking down, he could see the defendant looking down the driveway, that that was the only way out of the house, that was the only way into the house, and that's where he was looking. And the third case agent also testified. And on cross-examination by defense counsel, he reiterated that he was looking at a look as he was acting as a lookout. He wasn't just simply standing there looking down the driveway. His head was moving back and forth. Obviously, when the money is being moved, he has to move away from the driveway and he walks over to the car. And there, as the evidence showed, after each box came, was put into the trunk, it was the defendant who walked over and did something in the back of that trunk. A reasonable inference for the jury would be he adjusted the boxes that were in that trunk and that was the reasonable inference that the agents testified to during trial. Again, showing an ownership interest in the boxes, showing his involvement in the conspiracy. We also had the number of telephones, as the court pointed out, with the defendant having the number one telephone and the other defendant who was outside the residence having the number six telephone. Can I ask you a question? Do you oppose the motion for us to look at the videotape or accept the videotape? I know, Your Honor, it is part of the record. I don't think there's anything to be gained from looking at the videotape because credibility findings were already really determined by the jury and that's not before the court. And the evidence was that both agents gave their opinion as to what that videotape meant, what was demonstrated on that videotape. There was no other evidence that was introduced to contradict their opinion or contradict what was shown on the videotape. So I don't, the government doesn't have any opposition to it being admitted or viewed by the court. With respect to trying to make a credibility finding or trying to determine whether what the agents testified to was accurate, that's already been decided by the jury in terms of their verdict. That's with respect to the sufficiency of the evidence. The only other issue, ladies and gentlemen of court, is the court's determination, district court's determination regarding role in the offense. Why defense counsel points out the court didn't do enough, it's the defendant who bears the burden by preponderance of evidence that he played a minimal or a minor role in this offense, that he was substantially less culpable than his co-defendants. The court specifically pointed to the testimony at court, at trial, the expert testimony, the role of an individual involved in the transfer of money, how it was a vital part of the organization, that the money had to be transferred back to Mexico so that more cocaine could be brought into the country. And the court didn't impose a role enhancement, just found that he was as culpable as the other defendants. Court also found the sentence to be reasonable. And while defense counsel has not raised the reasonablest argument, excuse me, appellant counsel has not raised the reasonablest argument in this case, court did find under the factors in 3553A that the 188-month sentence was a reasonable sentence in light of all those factors. And if the court doesn't have any questions, I'll submit at this time. Do you have any questions? Okay, thank you. All right, you may have one minute for rebuttal, counsel. Thank you, Your Honor. Regarding the comment about the receipt, he doesn't say I'm going to bring you the receipts of the drug proceeds. He just talks about a receipt. And there's no show – the appellant made no comment regarding to that. There was no showing that he knew or understood that to mean drug receipts. It could have been, you know, I'm going to bring you – I bought some stuff for you at the grocery store. I'll bring you the receipts for that. It sure is coincidental, though, that it occurs on the day of – that they're moving all of these drugs and all of this cash, isn't it? Well, I don't think coincidence – you're right, Your Honor, but I don't think that coincidence is enough to convict my client. And you had an expert who testified that in drug lingo, that receipt stood for something else. Well, again, I would characterize that as scant evidence. I would characterize the notion that they – the government can see into my client's head, and if he's standing around looking down, looking somewhere, that that somehow is – they can know what's going through his head. I ask Your Honors to look at the cases that I've cited in my opening brief. And I think if you compare the facts of this case with the facts of those cases, particularly as to the notion of lookout and dominion and control over the box, I think you'll see that this case really falls within the parameters of those other cases and the factual substantial similarities where I've found – where this Court has found in the other cases that there was not substantial evidence for a conviction. I would submit the facts in this case show the same. All right. Thank you very much, counsel. The case of United States v. Preda Cazada is submitted. United States v. Melchor Torres is also submitted. We'll hear United States v. Amos. Thank you.
judges: Wardlaw, Paez, Bybee